Argued and submitted June 9, 1986, reversed and remanded for new trial
February 11, 1987

STATE OF OREGON,
*Respondent,*

*v.*

JIM ALLEN PEARSON,
*Appellant.*

(C84-10-34373; CA A36548)

732 P2d 937

Wayne Mackeson, Portland, argued the cause for appellant. With him on the brief was Des Connall, Portland.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

YOUNG, J.

## YOUNG, J.

Defendant appeals his convictions for the manufacture and possession of a controlled substance. ORS 475.992. He argues that the trial court erred in denying his motion to suppress evidence seized as the result of a warrantless search of a house that he rented. We agree and reverse.

In June, 1984, Antonsen and Hough acquired a purchaser's interest in a land sale contract for a house which defendant rented. At Antonsen's request, the assignor mailed a notice of eviction to defendant, terminating the tenancy on July 30. On July 5, Antonsen and Hough went to the house, and defendant acknowledged receiving the eviction notice. Hough noticed that there was fiberglass insulation on the basement windows and heavy condensation on the front living room window. On July 7 and 8, Antonsen stopped by the house, which did not look occupied. The lawn was not maintained, and there did not seem to be any activity around the house. Although there was a "beware of dog" sign and a dog bowl, Antonsen never saw or heard a dog. A neighbor told him that he had never seen a dog around the property, that the occupants were there only 10 to 15 minutes a day, that a radio or television was on all of the time and that a light was also always on in the house. The neighbor testified that he told Antonsen that he "thought that somebody was growing pot in there." On July 9, Antonsen stopped by the house and left a "24 hour notice," which stated his intention to inspect the premises.

Hough and Antonsen contacted the Multnomah County Sheriff and the Troutdale police regarding their suspicions. The police told them that the house was outside its jurisdiction, but they arranged a meeting with the sheriff's office. Sergeant Wells of that office testified that Hough and Antonsen wanted officers to check the house for damage. He told them that the police would not get involved, primarily because it was a "civil thing." Sometime later, Hough and Antonsen apparently called Wells and again asked that officers stand by while they entered the house, because they feared for their safety. Wells agreed to send a car, with instructions that the officer was "not to physically do anything to help the gentlemen unless there was any kind of

hostilities between the parties involved." Two officers joined them before going to the house.

On arriving at the house, Antonsen knocked on both doors, but received no answer. There was no indication that there was any person or dog inside. He was unable to open the front door with a key. Antonsen, Hough and the officers proceeded to the back of the house, where Antonsen and Hough broke a window in the back door. As Hough climbed through the window, he noticed a "very unique odor" and that the temperature inside was about 95°. Hough testified that he could see plants which he believed to be marijuana in the basement, some pots on the steps and some leaves on the kitchen counter. He promptly unlocked the door from the inside, and Antonsen and the officers came in. The officers first went to the basement, where they saw marijuana plants, potting soil and grow lights. Marijuana plants and paraphernalia were found in various other parts of the house. The narcotics unit later arrived and "went through the whole thing."

The trial court denied defendant's motion to suppress. Defendant argues that the warrantless search was invalid, because (1) the landlords could not consent to a search and (2) there was no emergency to justify the officers' entry. Defendant also argues that Hough and Antonsen's entry was unlawful, because they were acting as "police agents" at the time they entered the house and because exigent circumstances did not then exist.[1]

In *State v. Scott,* 82 Or App 645, 729 P2d 585 (1986), we adopted, for purposes of Article I, section 9, the "common authority" test of *United States v. Matlock,* 415 US 164, 94 S Ct 988, 39 L Ed 2d 242 (1974). Under that test, a warrantless search is valid if made pursuant to consent lawfully obtained "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 US at 171. *Matlock* explains the "common authority" concept:

---

[1] Defendant's motion to suppress was based both on Article I, section 9, of the Oregon Constitution, and on the Fourth Amendment to the United States Constitution. We decide the state constitutional issues first. *See Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981). No issue of probable cause was raised in this case.

"The authority which justifies the third-party consent * * * rests * * * on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 US at 172 n 7.

■    It has been uniformly held that a lessor lacks "common authority" to consent to a search of the leased premises so long as a valid lease exists, unless the lessor has the right to possess some portions of the premises. *See* cases collected in *Annot,* "Search Authorized by Defendant's Lessor", 2 ALR 4th 1173; 2 Lafave, *Search and Seizure,* § 8.5(a) (1st ed 1978);[2] *State v. Carsey,* 295 Or 32, 664 P2d 1085 (1983). The present case is virtually on all fours with *Chapman v. United States,* 365 US 610, 81 S Ct 776, 5 L Ed 2d 828 (1961), where the Court held that the landlord of a house is not authorized to consent to a police search of the premises merely because he is empowered under the law to enter for the purposes of viewing waste. *See also Stoner v. California,* 376 US 483, 84 S Ct 889, 11 L Ed 2d 856 (1964). We approve the holdings of those cases and hold that the landlords' third-party consent here was invalid under Article I, section 9.

■■    We turn to the question of emergency. Under the "emergency doctrine," police officers may enter a residence without a warrant to render emergency aid if they reasonably believe that there is a need for immediate action to protect life or property. *See State v. Jones,* 45 Or App 617, 620, 608 P2d

---

[2] Lafave states:

"As a general proposition, it may be said that a lessor who enters into a lease with a lessee granting the lessee exclusive possession over a certain area may not, during the period of the lease, give a consent to a police search of that area which will be effective against the lessee. This is so whether the arrangement involves the rental of a house, an apartment, a room in a rooming house, hotel, or motel, or even a locker. The rule is not otherwise merely because the lessor has by express agreement or by implication reserved the right to enter for some special and limited purpose. This means that the landlord of a house is not authorized to consent to a police search of those premises merely because he is empowered under the law to enter for the purposes of viewing waste, and that a hotel employee may not authorize a police search of a rented room merely because the hotel may permit such persons as maids, janitors and repairmen to enter the room in the performance of their duties." Lafave, *Search and Seizure, supra,* § 8.5(a). (Footnotes omitted.)

1220, *rev den* 289 Or 337 (1980); *State v. Frink,* 42 Or App 171, 600 P2d 456 (1979). The linchpin in the cases which rely upon the doctrine to justify a warrantless entry is the urgent need to render aid and assistance. *State v. Davis,* 295 Or 227, 238, 666 P2d 802 (1983). A remote possibility of harm cannot justify a warrantless entry into the private recesses of a house; the Oregon Constitution demands that a warrant be issued, unless there are articulable facts that show a compelling and urgent need for the entry. *State v. Davis, supra,* 295 Or at 243. The trial court did not find that an urgent need existed, for there was at best a remote possibility of harm. Because there was no emergency, the officers were not justified in entering.

Defendant's argument that Hough and Antonsen were "police agents" is without merit.

Reversed and remanded for a new trial.