## STATE OF OREGON,
*Respondent,*

*v.*

## FREDERICK CHARLES SCHMITT,
*Appellant.*

(C 89 08 34126; CA A64957)

822 P2d 159

Jack D. Howe, Portland, argued the cause and filed the brief for appellant.

Harrison Latto, Assistant Attorney General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## JOSEPH, C. J.

Defendant appeals his conviction, after a trial to the court on stipulated facts, of possession and delivery of a controlled substance. ORS 475.992(1), (4). He assigns error to the court's denial of his motion to suppress evidence found in his home. We affirm.

The court either made, or could have made, the findings that we recite, which are consistent with its conclusion. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). At approximately 9:00 p.m. on July 10, 1989, Portland Police Bureau Drug and Vice Division officers Gray and Anderson drove through a parking lot at Southeast 82nd Avenue and Division Streets in an area known to them to have a high incidence of narcotics sales. They saw a car pull in next to a phone booth on its street side. They stopped beside a store and watched. A person later identified as Porter got out of the car, made a brief telephone call and returned to the car. Five minutes later, a person later identified as defendant's wife, Vicki Schmitt, stopped her car beside Porter's car. He got into her car on the passenger's side, and she then parked by the phone booth.

The officers drove their unmarked car without its headlights on and stopped 15 feet behind Schmitt's car. They got out and, displaying their badges and using flashlights, approached it. Both officers testified that they then smelled marijuana. As Gray neared Schmitt's door, she hurriedly closed the window and locked the door. Showing his badge, Gray shouted that he was a police officer. He saw "a lot of commotion" inside the car but could not make out the activity clearly, because the windows were tinted. Anderson, who approached on Porter's side, testified that he saw a paper bag at Porter's feet and saw him stuff a roll of money into the front pocket of his pants. Gray shouted his identity again, and Schmitt rolled down her window. Gray testified that the smell of marijuana then became very strong. He asked Schmitt for her driver's license. She had none. Anderson had Porter get out of the car.[1] He ordered Schmitt to hand him the paper bag. He searched it and discovered roughly an ounce of marijuana in a closed, transparent bag.

---

[1] Anderson questioned Porter and then released him.

Gray then had Schmitt step from the car, arrested her for delivery of a controlled substance and advised her of her rights. She admitted to possessing marijuana and consented to a search of her person. Gray found 3 ounces of marijuana in closed, transparent bags in her purse. He then asked her if she grew marijuana at home. She denied that she did and consented to a search of her house. Gray, Anderson and a uniformed officer took her there and knocked on the door. Defendant answered. The officers entered the front room and told defendant that his wife had consented to a search. He responded that they needed a warrant. The officers could smell marijuana in the house. They told defendant that he could either consent to a search or that they would secure the house while they obtained a warrant. He then consented to a search. The officers found a half pound of marijuana in a bag in the kitchen.

The court concluded that Gray had stopped Schmitt when he identified himself at her car. It ruled that the stop was valid because, at that time, the officers had a reasonable suspicion that a crime was being committed. It also ruled that, once Schmitt opened her window and the smell of marijuana became very strong, they had probable cause to arrest her. The court found that she had consented to the search of the house. It ruled that, once the officers were inside the house and had smelled marijuana, they had probable cause to arrest defendant and to search the house.

■  Defendant asserts that the officers stopped Schmitt when they stopped their car behind hers and that, at that time, they had no reasonable suspicion to support a stop. ORS 131.615. He is wrong about when the stop occurred. The trial court was correct.

■■  Defendant also asserts that he did not consent to the search of the house and that, under Article I, section 9, of the Oregon Constitution, the evidence that the officers found was inadmissible. He argues that Schmitt did not consent to a search of the house.[2] However, the court found that she consented and that she did not revoke her consent. There is evidence to support those findings. *Ball v. Gladden, supra,* 250 Or at 487. Under section 9, a warrantless search is valid if

_____

[2] Defendant does not argue that Schmitt revoked her consent.

it is conducted pursuant to consent obtained from any party who possesses authority over the premises. *State v. Pearson*, 83 Or App 624, 627, 732 P2d 937 (1987). Schmitt lived in the house, and the officers needed only her consent to search it.

■ Defendant also argues that the court erred when, in the course of the suppression hearing, the judge sniffed quantities of marijuana to determine whether the officers could have smelled it before stopping Schmitt and after entering defendant's house. Even if that procedure was arguably improper, defendant expressly agreed to it at trial. We will not now consider an assertion that it was error.

Affirmed.