STATE OF OREGON,
*Respondent,*

*v.*

JOHN W. BARTLEY,
*Appellant.*

(323-C-90; CA A69895)

854 P2d 996

Wayne Mackeson, Portland, argued the cause for appellant. With him on the brief was Des Connall, Portland.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

Defendant appeals his convictions for assault in the fourth degree, ORS 163.160, rape in the first degree with a firearm, ORS 163.375; ORS 161.610, and two counts of burglary in the first degree with a firearm. ORS 164.225; ORS 161.610. We affirm.

The victim was four or five years old in 1967 when defendant married her mother. Defendant and the victim's mother divorced in 1976. In 1981, the victim's mother moved back in with defendant, but they did not remarry. From the time that the victim was approximately 11 or 12 years old, defendant began having sexual intercourse with her. The victim testified that, between 1976 and 1981, defendant forced her to have intercourse with him one to three times per month. Defendant continued to have intercourse with her until the time of the events at issue in this case.

In 1990, the victim moved to Fossil, Oregon. Defendant came to her house on a regular basis, once or twice a month, and had intercourse with her. On October 19, 1990, defendant was at the victim's house when she returned home from work. That night, after she went to bed, defendant came into the bedroom and started touching her. The victim told him to stop, a struggle ensued and defendant forced her to have intercourse with him. Afterwards, defendant told the victim that that was the last time and that he would never do it again.

On November 16, 1990, defendant was again at the victim's house when she arrived home from work. Ostensibly, defendant was there to retrieve items that he and the victim's mother had given to her.[1] Shortly after the victim arrived home, defendant pulled her into the bedroom, where a struggle ensued. The struggle ended when defendant pulled clumps of hair out of the victim's head. At that point, defendant told the victim that he had a "peace offering" for her. He went out to his car and returned with a handgun. He pointed it at her, told her to get on the bed and then held the barrel to

---

[1] The victim had told her mother that she would no longer visit her and defendant at the family home in Milwaukie. Apparently, the victim's mother was offended and told the victim that she no longer considered her to be her daughter and wanted the items returned.

her chin. The victim told defendant that she would do anything he wanted. He asked her if she would have intercourse with him anytime he wanted and she agreed. Defendant put the gun down on the nightstand next to the bed and had intercourse with the victim. Defendant spent the rest of the evening and night with her. The victim testified that defendant left the gun on the nightstand as a reminder of what would happen if she did not do everything she was told to do.

The next morning, defendant woke up just before daylight and wanted to have intercourse again. The victim complied. Later in the day, defendant fell asleep on the couch. The victim hid the gun in a blanket on a shelf in the bedroom closet, left by way of the back door, went to her workplace and called the police. Two officers met the victim at her workplace. She reported that defendant had held a gun to her, held her against her will and raped her, and that she wanted him out of her house. She told the officers that she thought he was still at her house and that she had hidden the gun in a blanket on a shelf in the bedroom closet. A short time later, four officers went to the victim's house where they arrested defendant and seized the gun from its hiding place.

Defendant testified that he and the victim had had an intimate and consensual relationship since 1982 or 1983. He also testified that he frequently visited the victim at her home in Fossil and that he always took his gun with him. He said that he always took the gun in the house and left it in the bedroom, because it would slide out from under the car seat. He testified that he never threatened the victim with a gun. He said that they had consensual intercourse on October 19 and again on November 16. He said that, on November 16, the victim was angry because her mother no longer considered the victim to be her daughter. The victim then struck him on the shoulder and hit him hard in the ear. Defendant then ran his hands up her hair and "just frizzed it all up," because he was angry, but he did not attempt to pull her hair, nor did he hit her.

Defendant said that they then made up and had consensual intercourse. They again engaged in consensual intercourse between six and seven the following morning. Later, defendant sat down to watch television and eventually

fell asleep. He was awakened by the doorbell sometime later and was arrested when he opened the door.

In his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress all evidence and testimony related to the gun seized by the police from the victim's bedroom closet. According to defendant, that seizure was unconstitutional, because it was without a warrant and the gun was not in plain view. Defendant's argument is confusing because, although he concedes that the victim consented to the search of her residence and that the officers were lawfully on the premises, he essentially argues that the victim could not consent to the seizure of someone else's property.

The state's response to defendant's argument is even more confusing. The state asserts that, because we have ruled that the discovery of evidence in plain view need not be inadvertent, the seizure of the gun from its hiding place was within the plain view exception to the warrant requirement. *See State v. Peterson*, 114 Or App 126, 834 P2d 488, *rev dismissed* 315 Or 272 (1992). Although the victim directed the officers to where the gun was hidden, the gun was not in plain view and that exception to the warrant requirement does not apply.

Nonetheless, the seizure was legal, because the officers had the victim's consent to enter and search her residence. Defendant's argument that the victim could not consent to the seizure of his property has no merit. A person who owns or otherwise controls a residence and has free access to enter all parts of it at anytime can "consent to a search of the entire premises, and anything found [can be] properly seized, regardless of who own[s] it." *State v. Rivas*, 99 Or App 23, 31, 781 P2d 364 (1989), *rev den* 310 Or 122 (1990); *see also State v. Tanner*, 304 Or 312, 321, 745 P2d 757 (1987); *State v. Lynch*, 94 Or App 168, 172, 764 P2d 957 (1988); *State v. Pearson*, 83 Or App 624, 628, 732 P2d 937 (1987).

In his second assignment of error, defendant argues that the trial court erred in denying his motion to exclude from evidence any references to the nature or extent of his

sexual relationship with the victim before April 10, 1988.[2] His argument is two-fold. First he says that allowing such evidence is a violation of OEC 404(3), which provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

He also argues that allowing such evidence is a violation of OEC 403, because it is unfairly prejudicial. *State v. Johns, supra,* n 2.

In ruling on the admissibility of evidence of prior acts or wrongs, the trial court was required to find that the evidence was relevant to a fact at issue in the trial. *State v. Johns, supra,* n 2, 301 Or at 549. The trial court must then determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice. OEC 403. In making that determination, the trial court should consider

"(1) the need for the evidence; (2) the certainty that the other [act or wrong] was committed and that defendant was the actor; (3) the strength or weakness of the evidence; and (4) its inflammatory effect on the jury." 301 Or at 557.

We review the trial court's ruling under OEC 403 for abuse of discretion. *State v. Brown,* 310 Or 347, 361, 800 P2d 259 (1990).

The trial court first found that the victim's testimony of the long history of a sexual relationship with defendant was relevant to the issue of consent. Defendant did not deny that he had intercourse with her, but he did argue that it was consensual. Defendant argues that, "whether or not the

---

[2] Defendant argues that he cannot be charged with any conduct that occurred before that date because of the three-year statute of limitations. ORS 131.125. The state argues that defendant's objection was inadequate to preserve the issue for appeal. Although we may agree with the state that defendant's argument based on the statute of limitations is defective and inadequate to preserve the issue for appeal, we find that defendant made sufficient arguments in his motion based on OEC 404(3), OEC 403 and *State v. Johns,* 301 Or 535, 725 P2d 312 (1986), to preserve the question of the admissibility of evidence of his prior sexual relationship with the victim.

complaining witness and defendant engaged in sexual intercourse when she was eleven or twelve made absolutely no difference to the resolution of that issue." The trial court disagreed and so do we. The evidence of the sexual relationship dating back to when the victim was only 11 or 12 years old helped explain to the jury why the victim might act the way she did and yet still not consent to sexual intercourse with him. *State v. Hall*, 108 Or App 12, 814 P2d 172, *rev den* 312 Or 151 (1991).

After extensive argument and briefing of the issue by trial counsel, the trial court applied the *Johns* analysis to determine whether the risk of unfair prejudice outweighed the probative value of the evidence. In summarizing that analysis, the trial court said:

"The need for the evidence? I feel there is a need. [Certainty] that the other crime was committed, I'm not in a position to judge. The strength or weakness of the evidence, I think it's important for the jury to understand the ongoing relationship of these parties to understand — to misquote the title of a book, 'To Understand How They Got to Know.' Its inflammatory effect on the jury. It will be inflammatory, and there's no question about that. The nature of a rape case, of course, is inflammatory. The nature of sexual relationships between a prior stepfather and stepdaughter is inflammatory, even though that stepdaughter is an adult; when that stepdaughter is a child, it is more inflammatory. I feel it is outweighed in this case by the need for the evidence, by its strength in addressing the issue [of consent]."[3]

The trial court did not abuse its discretion in allowing the evidence.

Affirmed.

---

[3] At defense counsel's request, the trial court also gave a limiting instruction to the jury when the prosecution alluded to the long history of a sexual relationship between the victim and defendant in its opening statement:

"You may not consider such evidence for the purposes of determining that [defendant] has a propensity or character trait to engage in particular behavior or that he is a bad man. * * * [I]f such evidence is allowed, it will be for a limited purpose, and such evidence is never allowed for the purpose of showing that a person is a bad human being and therefore is more likely to commit a crime."

The trial court also gave a limiting instruction as part of its general instructions to the jury.