STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHAUNDA LORRAINE VOYLES,
*Defendant-Appellant.*

Lincoln County Circuit Court
114103; A156007

382 P3d 583

Thomas O. Branford, Judge.

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Shaunda Voyles filed the supplemental brief *pro se.*

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

Defendant appeals a judgment of conviction for 18 counts of second-degree animal neglect (Counts 2 to 19) and one count of felon in possession of a firearm (Count 1). Defendant first assigns error to the trial court's denial of her motion to suppress evidence obtained following the state's warrantless search and subsequent seizure of four horses that were boarded on third parties' properties. This assignment solely relates to a search and seizure of evidence that related to the conviction on four of the 18 counts of second-degree animal neglect (Counts 15 to 18). We write to address only the first assignment of error, and conclude that the trial court erred in denying defendant's motion to suppress evidence obtained from the seizure of the four horses boarded on third-party properties. We further conclude that the error was not harmless. We reject defendant's second and third assignments of error without discussion as well as defendant's *pro se* arguments. As a result, we reverse and remand on Counts 15 through 18, but otherwise affirm the judgment.

The determination of the legality of a search and seizure under Article I, section 9, of the Oregon Constitution "depends largely on the facts of each case." *State v. Ehly*, 317 Or 66, 74, 854 P2d 421 (1993). When reviewing a denial of a motion to suppress evidence obtained through the state's search and seizure, we are bound by the trial court's findings of historical fact "if there is constitutionally sufficient evidence in the record to support those findings." *Id.* at 75. If findings are not made on all pertinent historical facts, "we will presume that the trial court found facts in a manner consistent with its ultimate conclusion." *State v. Stevens*, 311 Or 119, 127, 806 P2d 92 (1991). We review the trial court's legal conclusions under Article I, section 9, for errors of law. *State v. Campbell*, 306 Or 157, 163, 759 P2d 1040 (1988).

Applying the above factual standard of review, we state the relevant facts from the trial court's findings and the record. Deputy Sheriff Tyler was an animal control officer with the Lincoln County Sheriff's Office. In October 2011, Tyler executed a warrant to search defendant's rural property and seize evidence relating to alleged animal

neglect involving a large number of defendant's horses and other animals. In addition to the search of defendant's property pursuant to the warrant, other county officers and personnel visited two additional properties owned by third parties, the "Hopkins property" and the "Fox Creek property." Defendant was boarding two additional horses at each of those properties. The sheriff's deputies did not have warrants to search or seize evidence from the Hopkins or Fox Creek properties.

The Hopkins property was less than two miles from defendant's property. Hopkins, the property owner, had been keeping the horses for defendant at the Hopkins property and barn, but defendant was responsible for the horses' care. Hopkins was concerned about the care that the two horses were receiving. Hopkins let the sheriff's deputies and other personnel onto her property. Tyler testified that, while deputies were at the Hopkins property, Hopkins voluntarily went to retrieve the horses and handed them over to the county personnel who were collecting them.

Hopkins also alerted the deputies that there were another two horses at the Fox Creek property. Hopkins relayed that the Fox Creek owners also welcomed the county to come onto their property and remove defendant's other two horses. Hopkins further relayed that the Fox Creek owners believed that those horses were also neglected. Tyler also testified that she understood from her county colleagues that the owners of Fox Creek gave the county permission to take defendant's other two horses from that property, and the county removed them.

Neither party presented evidence of any formal rental or boarding arrangements, if any existed, that had been negotiated between defendant and the third-party property owners with respect to defendant's horses. Tyler understood that the third-party property owners "boarded" the horses, but that defendant was supposed to care for them. Defendant, who did not bear the burden of proof, presented no evidence regarding any rental or boarding agreements. Beyond the fact that the third-party property owners owned their properties and gave access to the sheriff's personnel,

there is nothing in the record regarding any restrictions on the property owners' or defendant's right to access the properties or the particular stalls and pastures where defendant's horses were held.

As noted above, defendant moved to suppress evidence, mainly the horses that were seized, that resulted from the warrantless search of the Hopkins and Fox Creek properties. In response, the state argued, among other things, that the deputies did not need a warrant because the third-party property owners consented to the search of their properties and defendant lacked the authority to assert a privacy interest over her horses once she left them on the third parties' properties. The trial court denied the motion to suppress, concluding that the deputies did not need a warrant because the third-party property owners consented to the search of their properties and voluntarily handed over the horses that defendant boarded there.

Defendant assigns error to that ruling. On appeal, defendant argues, among other things, that any evidence of purported consent given by the third-party property owners to allow the state to take defendant's horses from their properties was irrelevant because the state failed to prove that those third parties had *the legal right* to (1) let the state come into the particular areas of the properties where defendant's horses resided, such as within particular stalls or pastures, or (2) consent to give defendant's horses to the government.

Defendant also argues on appeal that the state failed to meet its burden to demonstrate that it could conduct a warrantless search and seizure of the horses because the state failed to show that defendant had given up all of her privacy interest in her horses by boarding them with others. The state argues again before us that the seizure of the horses was justified by the third-party property owners' consent to allow the deputies to enter their properties. The state relatedly contends that, even if defendant had a protected privacy or possessory interest in the horses, those interests were not invaded when the third parties consented to allow the deputies onto their properties and handed over the horses.

Article I, section 9, protects the right of the people to be "secure * * * against unreasonable search, or seizure."[1] Where evidence is seized as part of a warrantless search, the state has the burden to prove by a preponderance of the evidence that the search was legal and did not violate Article I, section 9. ORS 133.693(4); *State v. Cook*, 332 Or 601, 608, 34 P3d 156 (2001). A warrantless search is *per se* unreasonable unless it falls "within one of the few specifically established and carefully delineated exceptions to the warrant requirement." *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988); *see also State v. Howard/Dawson*, 204 Or App 438, 441, 129 P3d 792 (2006), *aff'd*, 342 Or 635, 157 P3d 1189 (2007) (stating same). The state may also prove that a warrantless search was lawful by proving that the defendant had no protected privacy or possessory interest in the property and, therefore, the examination and confiscation of the property was not a search or seizure protected under Article I, section 9. *Howard/Dawson*, 204 Or App at 441-42.

This case involves challenges to the deputies' separate searches and seizures, which implicate different but related constitutional interests, namely, an individual's privacy and possessory interests in personal property. "Searches and seizures are separate acts calling for separate analysis." *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987). Here, there were "searches" of the third-party properties—the sheriff's deputies' entry onto the third-party properties—and separate "seizures" of defendant's horses when they were handed over to the deputies by the third parties. "A 'search' occurs when a person's privacy interests are invaded, and a 'seizure' occurs when there is a significant interference with a person's possessory or ownership interests in property." *State v. Howard/Dawson*, 342 Or 635, 640, 157 P3d 1189 (2007) (quoting *State v. Owens*, 302 Or 196, 205-06, 729 P2d 524 (1986) (some internal quotation marks omitted)). With that distinction in mind, we first analyze defendant's challenge to the deputies' search of the

---

[1] Article I, section 9, provides, in part, that "[n]o law shall violate the rights of the people to be secure in their persons, house, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause[.]"

third-party properties and then turn to the challenge to the seizure of the horses.

As noted, the state argues that the third-party property owners' consent to the search of their properties—here, the consent to the entry onto their properties—obviated the need for a warrant. Consent is an established exception to the warrant requirement. *State v. Bonilla*, 358 Or 475, 480, 366 P3d 331 (2015). Consent has been described as an exception, but it also "relinquishes a person's privacy interest in property so that there is no unlawful intrusion under Article I, section 9." *Id*. As relevant here, the doctrine of consent has been extended to include a third party's consent to search that third party's property. We have concluded that a third party's consent to the police to search property owned or controlled by the third party is sufficient to permit the police to conduct a warrantless search of that property. *State v. Rivas*, 99 Or App 23, 31, 781 P2d 364 (1989), *adh'd to as modified on recons*, 100 Or App 620, 788 P2d 464, *rev den*, 310 Or 122 (1990).

Consent, however, is only as good as the authority of the person providing it. In other words, "a consent search is justified only if someone who had authority gave consent." *Bonilla*, 358 Or at 489. The state must prove by a preponderance of the evidence that consent was provided by "someone having the authority to do so."[2] *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). In determining whether a third party had the authority to consent, the trial court "must consider the totality of circumstances, including facts that may not have been available to the police when the decision to search was made." *Bonilla*, 358 Or at 492. Whether the third party had authority to consent to a search of another's property is a fact-specific inquiry and depends on the "relationship of the third party to the premises or the things searched." *State v. Fuller*, 158 Or App 501, 505, 976 P2d 1137 (1999).

---

[2] In *Bonilla*, the Supreme Court held that the existence of a valid third-party consent to search property "depends either on the third party's common authority over the property based on her or his own property interest *** or, alternatively, on the application of agency principles." 358 Or at 486. Here, the state argues that there was consent given by the third-party property owners to come onto their land, and does not argue based on agency principles.

The evidence on the record is sufficient to support the trial court's determination that the property owners consented to the deputies' searches of their properties. The evidence presented by Tyler regarding the third parties' ownership of their properties and consent was sufficient to conclude that they had the authority to consent to the sheriff entering their own properties.

Defendant, nevertheless, argues that the state must still prove that the third-party property owners had common authority "over the particular area where defendant's horses were boarded," such as in any particular stalls or pastures where the horses may have stayed, and that "common authority is not implied from the mere property interest a third party has in the property." We reject that argument based on the particular facts presented here.

As noted, there is sufficient evidence in the record to meet the state's burden to prove that the property owners had actual authority to consent to the entry of the deputies onto their property. That conclusion persists when further looking at the "totality of circumstances, including facts that may not have been available to the police." *Bonilla*, 358 Or at 492. Significantly, outside of the fact that defendant's horses were boarded on the property, there is nothing in the record to indicate that defendant had *any* exclusive or even joint control over the third parties' real properties that gave her the right to exclude the property owners from using parts of their own properties. There is also no evidence in the record, such as a formal lease or boarding agreement, that defendant had any right to exclude the Hopkins or Fox Creek property owners from the portions of their properties where her horses were located. There is also no evidence that there were any signs or gates that would have indicated that the areas on the third-party properties were for defendant's and her horses' exclusive use and not actually controlled by the property owners. There also was no evidence of any common authority over the property or parts of the property outside of the general evidence that defendant boarded her horses on the properties.

This case is unlike those in which co-owners, joint tenants, or joint users, such as housemates or roommates,

have common authority to consent to allow the police to enter a house, but may not have authority to consent to entry into a limited area within the house—for example, a particular room that they may not share or a nightstand that is controlled only by one roommate—or may not have authority to allow the police to search for personal effects within an area subject to common authority. *See Bonilla*, 358 Or at 492-93 (concluding that state failed to adduce evidence that mother had actual authority to consent to police search of closed wooden box that was within room she shared with the defendant, her daughter); *Fuller*, 158 Or App at 506-07 (concluding that roommate had authority to consent to allow the police to enter her room that she shared with the defendant, but lacked authority to consent to a police search of defendant's nightstand within the room); *State v. Jenkins*, 179 Or App 92, 102, 39 P3d 868, *rev den*, 334 Or 632 (2002) (the defendant's parents did not have a right to consent to a search of the garage on their property because the evidence in the record indicated that they had ceded control over the garage to their son who paid for its use and excluded his parents from entering when he was in there).

The sheriff's deputies entered the properties with authority from the owners and were provided the four horses. In sum, the trial court correctly determined that the property owners had the actual authority to consent to the sheriff's entry onto their properties, and the evidence does not require a contrary conclusion that defendant had any authority to exclude the owners from particular parts of the properties where her horses stayed.

We turn next to whether the deputies invaded defendant's possessory interest when the deputies seized defendant's horses with the consent of the third parties who had been boarding defendant's horses. Defendant argues that, even assuming she had no privacy or possessory interest in general in the third-party properties where she boarded her horses—and could not object to the owners allowing the deputies on their properties, she still had a possessory interest in her horses that she did not abandon simply by boarding them on those properties. We agree and conclude that the state did not present sufficient evidence to meet its burden

to show that defendant relinquished her possessory interest in her horses by boarding them with third parties.

As the Supreme Court presented it when considering the same issue, albeit on very different facts, "the question before us is 'whether the defendant's statements and conduct demonstrated that [she] relinquished all constitutionally protected interests in the articles of property.'" *State v. Brown*, 348 Or 293, 300, 232 P3d 962 (2010) (quoting *Cook*, 332 Or at 608 (brackets in *Brown*)). Whether defendant retained a constitutionally protected interest in the property is further informed by the "legal relationship" between her and the third parties with respect to that property. *See Howard/Dawson*, 342 Or at 642 (stating that whether defendants had abandoned their privacy interest in garbage they placed outside for collection is informed by, although "not necessarily coextensive with," "the legal relationship between defendants and the sanitation company").

Here, the trial court's findings and the evidence demonstrate that defendant had been boarding her horses with third parties. While there was no evidence of a formal written agreement, the evidence supports the conclusion that defendant retained her possessory interest in her horses, was supposed to care for them, and was not abandoning her ownership of the horses by merely boarding them elsewhere. Unlike the defendants in *Brown* and *Dawson/Howard*, defendant had not disclaimed ownership or voluntarily given up possession without retaining any rights to retrieve her property. *Cf. Tanner*, 304 Or at 323 (holding that a defendant who had pledged property, which turned out to be stolen, had a right to reclaim the pledged property and had not abandoned the property for the purpose of the Article I, section 9, analysis of defendant's privacy rights). We conclude that defendant did not relinquish her possessory interest in her horses merely by boarding them with third parties. The trial court erred in effectively concluding that the third-party property owners' consent was sufficient both to permit the deputies to enter their land *and to seize defendant's horses* when it was not sufficient to permit the seizure.

While defendant had no general right to privacy in the third parties' real properties and the state did not invade *that* interest by coming onto those properties with the third-party property owners' consent, the state did invade defendant's possessory interest in her horses by seizing them without a warrant and without demonstrating an exception to the warrant requirement. The third-party property owners' consent to the seizure was not sufficient to overcome defendant's possessory interest. In other words, the third-party property owners could not hand over horses that they did not have a legal right to hand over by virtue of the simple boarding relationship.

The state, nevertheless, argues that, if a sheriff's deputy may constitutionally search a home or car based on the home- or car-owners' consent, a sheriff's deputy may also seize anything found within the properly searched area even if the seized items belong to other persons. The state primarily relies on *State v. Bartley*, 121 Or App 301, 854 P2d 996, *rev den*, 318 Or 25 (1993), and *Rivas*, 99 Or App at 31. In *Bartley*, we quoted *Rivas*, and concluded that

"[a] person who owns or otherwise controls a residence and has free access to enter all parts of it at any time can 'consent to a search of the entire premises, *and anything found [can be] properly seized, regardless of who own[s] it.*'"

121 Or App at 305 (quoting *Rivas*, 99 Or App at 31 (emphasis added; brackets in *Bartley*)). The state also relies on *State v. Ventris*, 164 Or App 220, 233, 991 P2d 54 (1999), and *State v. Lynch*, 94 Or App 168, 171, 764 P2d 957 (1988). In both *Ventris* and *Lynch*, automobile owners voluntarily retrieved the defendants' possessions that were left in their vehicles and displayed them to the police, who then seized them.

We note that the state's argument that an otherwise proper search of real property permits the state to seize anything found within that property is, without the inclusion of any further limiting principle, inconsistent with recent Supreme Court case law. As discussed above, that case law compels a separate and independent analysis of the search of the real property and seizure of the personal property within it, and the different interests they implicate. *See, e.g., Brown*, 348 Or at 302 (analyzing separately

whether defendant retained a possessory or privacy interest in the hotel room before analyzing whether she retained her possessory or privacy interest in her bags seized from the room). Even if the deputies have made a lawful entry into a private space, they may not seize personal property within that space unless they see evidence of a crime in plain view or the item is otherwise subject to seizure based on probable cause and an exception to the warrant requirement, such as exigency. *See State v. Sargent*, 323 Or 455, 463, 918 P2d 819 (1996) (holding that police were entitled to seize evidence of a crime that was in plain view of the place they were otherwise legally entitled to be by virtue of an arrest warrant). We note that the state does not argue that the horses themselves were evidence of a crime in plain view or that the seizure was subject to an exigency exception or some other exception to the warrant requirement besides consent.

Turning to the cases cited by the state, we did conclude in *Rivas* that, once the police received proper consent from the homeowner to search the property, "anything found was properly seized, regardless of who owned it." *Rivas*, 99 Or App at 31. In *Bartley*, we relied on *Rivas* and similarly concluded that the police, who had the consent of the homeowner to search, could seize a gun that the defendant left at the home. *Bartley*, 121 Or App at 305. Nevertheless, these cases cannot stand for the blanket proposition that, whenever law enforcement officers have received consent to search real property, they may seize any personal property found within it with the consent of the real property owner without regard to whether the officers have a constitutional basis to seize the personal property. To the extent that these cases could be read to stand for such a proposition, they conflict with subsequent Supreme Court law and, therefore, they are no longer good law.

The state also relies on *Ventris* and *Lynch*. Both of those cases are inapposite here. In *Ventris*, a van owner, in response to a police officer's request, voluntarily retrieved a pair of pants that the defendant left in the owner's van. 164 Or App at 223-25. The police officer had prior probable cause to believe that the pants contained evidence connecting the defendant to two crimes that the police were investigating. *Id.* We initially concluded that the seizure of the defendant's

pants was lawful based on the van owner's consent to the police to retrieve the pants. *Id.* at 223. In reaching that conclusion, however, we later specifically noted that, once the owner retrieved the defendant's pants, that "placed the officer in a position from which [the officer] could seize evidence in plain view." *Id.* at 234 n 9. *Ventris* does not stand for the blanket proposition that an owner of a private space, there a car, can consent to the police seizure of any personal property within it regardless of who owns the personal property.[3]

Similarly in *Lynch*, although we initially stated that a third party had authority to hand over the defendant's bag to the police, which the defendant had left in her car, we later stated that "the bag itself was recognized by the officer as being the object of a criminal investigation. The officer could have seized the bag itself as evidence of crime and obtained a search warrant for its contents." *Lynch*, 94 Or App at 171. Again, as in *Ventris*, there was an independent and legitimate constitutional basis for at least the seizure of the bag, namely probable cause to seize a bag that was in plain view and was recognized by the police as evidence of a crime.[4] *Id.* We do not find those cases to be controlling here.

In sum, we conclude that the trial court erred in denying defendant's motion to suppress evidence following the warrantless seizure of defendant's horses that were boarded on the Hopkins and Fox Creek properties. Because the evidence the state obtained from the post-seizure physical examination of those horses was essential to the state's theory, and to the subsequent jury verdict on four counts of second-degree animal neglect, that error was not harmless. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003)

---

[3] More recently, we have concluded that an automobile owner's consent to search the owner's automobile is insufficient to justify a warrantless *search* of another person's belongings inside the automobile. *State v. Jones*, 280 Or App 135, 138, 380 P3d 1132 (2016).

[4] Significantly, we also later held that the third party's consent to the police to then *search* the defendant's bag was not constitutional under Article I, section 9, because the third party did not have authority from the defendant to search the defendant's bag. *Lynch*, 94 Or App at 171-72. We correctly viewed the seizure and search of the bag as independent acts, each requiring either a warrant or probable cause and an exception to the warrant requirement. *Id.*

(concluding that an error is harmless only if there is "little likelihood that the error affected the jury's verdict").

Reversed and remanded on Counts 15 through 18; remanded for resentencing; otherwise affirmed.