Argued and submitted November 7, 2006, decision of Court of Appeals
and judgment of circuit court affirmed April 26, 2007

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## SHARON DAWN HOWARD,
*Petitioner on Review.*

(CC 01122854; CA A121011 (Control))

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GARY DEAN DAWSON,
*Petitioner on Review.*

(CC 01122853; CA A121012)
(SC S53429)
(Cases Consolidated)

157 P3d 1189

Patrick M. Ebbett, of Chilton, Ebbett & Rohr, LLC, Portland, argued the cause and filed the briefs for petitioners on review.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

KISTLER, J.

---

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

The question in this case is whether Article I, section 9, of the Oregon Constitution prohibits the police from engaging in a warrantless search of garbage that a sanitation company had picked up in the regular course of business and turned over to the police. The Court of Appeals held that, because defendants did not retain a possessory or privacy interest in the garbage once the sanitation company picked it up, the trial court correctly denied defendants' motion to suppress the evidence resulting from the search. *State v. Howard/Dawson*, 204 Or App 438, 129 P3d 792 (2006). We allowed review and now affirm the Court of Appeals decision and the trial court's judgment.

The relevant facts are straightforward. The police learned that Sharon Howard had made multiple purchases of iodine—a chemical used to manufacture methamphetamine. Based on that information, a police officer spoke with the sanitation company that regularly picked up Howard's garbage from her home and asked whether the company would turn Howard's garbage over to him after the company had collected it. The company agreed to do so and, on two different occasions, gave the garbage that it had picked up on the regularly scheduled collection day to the police officer. Based on information that the officer gleaned from that garbage, the police applied for and received a warrant to search Howard's home. During that search, the police uncovered additional evidence of drug manufacturing and use.

The state charged Howard and Gary Dawson, a resident of Howard's home, with manufacturing and possessing methamphetamine and also with frequenting a place where controlled substances are used. Before trial, defendants moved to suppress the evidence that the police had obtained both from the garbage and from the resulting search of Howard's home. At the hearing on that motion, defendants testified that they had not expected that the police would look through their garbage. They recognized, however, that they lost control over their garbage once the sanitation company picked it up. As Dawson testified, "once the trash leaves your house * * * you have no control over anything the trash man does to your garbage."

Based on that and other evidence, the trial court found that, when defendants left their garbage for the sanitation company to collect, "there [wa]s an intent to give up ownership." That is, the trial court found that defendants relinquished their ownership in the garbage once the sanitation company collected it. The trial court reasoned that, when the sanitation company later permitted the police to look through the garbage, the police did not invade any constitutionally protected possessory or privacy interest that defendants retained in the garbage. The court denied defendants' motion to suppress, and the case went to the jury, which found defendants guilty of the charged offenses.

■     The Court of Appeals, sitting en banc, affirmed the trial court's judgment. *Howard / Dawson*, 204 Or App at 449. The majority concluded that defendants had relinquished their possessory interests in the garbage and, as a result, their privacy interests as well. *Id.* at 443-44. In the majority's view, defendants had no basis to object to the sanitation company's decision to permit the police to search the garbage, and the subsequent search did not infringe any constitutionally protected interest that defendants retained. *Id.* The dissent reached a different conclusion. It reasoned that the police had invaded a protected privacy interest because the officers' acts, "if engaged in wholly at the discretion of the government, will significantly impair the people's freedom from scrutiny." *Id.* at 450 (Schuman, J., dissenting) (internal quotation marks omitted) (quoting *State v. Campbell*, 306 Or 151, 171, 759 P2d 1040 (1988)). We allowed review to consider the state constitutional issue that divided the Court of Appeals.[1]

■     Article I, section 9, of the Oregon Constitution provides, in part: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." As its terms imply, Article I, section 9, applies only when government officials engage in a "search" or a "seizure." *State v. Owens*, 302 Or

---

[1] Because the Fourth Amendment to the United States Constitution does not prohibit the police from searching a person's garbage after the sanitation company has collected it, *California v. Greenwood*, 486 US 35, 108 S Ct 1625, 100 L Ed 2d 30 (1988), defendants have based their argument solely on Article I, section 9, of the Oregon Constitution.

196, 205-06, 729 P2d 524 (1986). "A 'search' occurs when a person's privacy interests are invaded," and a " 'seizure' occurs when there is a significant interference with a person's possessory or ownership interests in property." *Id.* at 206-07. When, as in this case, the police act without a warrant and no exception to the warrant requirement applies, the question whether the police have violated Article I, section 9, reduces to whether the officers' acts invaded either a constitutionally protected possessory or privacy interest.

■ We note, as an initial matter, that defendants do not argue on review that they retained either an ownership or a possessory interest in the garbage once the sanitation company picked it up.[2] It follows that, if defendants had no ownership or possessory interest in the garbage once the sanitation company collected it, the officers did not seize the garbage in violation of defendants' Article I, section 9, rights; that is, the officers did not interfere, significantly or otherwise, with defendants' ownership or possessory interests. *See Owens*, 302 Or at 207 (explaining that a seizure occurs when government officials significantly interfere with a person's "possessory or ownership interests in property"). Rather, the sanitation company lawfully possessed the property once it collected it. *See Haslem v. Lockwood*, 37 Conn 500 (1871) (citizen who raked into piles horse manure abandoned on public thoroughfare lawfully possessed it as against other citizens). If any entity had a constitutionally protected possessory interest, it was the sanitation company but that company voluntarily turned the property over to the police.

■ Defendants focus on review solely on the question whether they retained a protected privacy interest in the garbage, the invasion of which would give rise to a "search." *See Owens*, 302 Or at 206 (defining a search as an invasion of a protected privacy interest). On that issue, as we noted above, defendants do not contend that they retained an ownership

---

[2] A person may have a right to possess property that he or she does not own. *See Wisbey v. Nationwide Mut. Ins. Co.*, 264 Or 600, 603, 507 P2d 17 (1973) (recognizing that the plaintiff lawfully could have possessed a car without owning it). In this case, the trial court found that defendants had relinquished their ownership interests in the garbage, and defendants have not claimed that they retained any possessory interest in the garbage.

or possessory interest in the garbage once the sanitation company picked it up. Similarly, they have not identified any other subconstitutional right or relationship that would prohibit the sanitation company from doing what it did here. For instance, defendants have not claimed that their contract with the sanitation company limited what the company could do with the garbage once the company took possession of it.

■ On this record, defendants retained no more right to control the disposition of the garbage once they turned it over to the sanitation company than they would had they abandoned it. As this court consistently has recognized, a person retains no constitutionally protected privacy interest in abandoned property. *See State v. Purvis*, 249 Or 404, 410-11, 438 P2d 1002 (1968) (holding that, under Article I, section 9, a person has no constitutionally protected privacy interest in abandoned property); *State v. Crandall*, 340 Or 645, 653, 136 P3d 30 (2006) (reaffirming *Purvis*). Indeed, we do not see a material distinction between the facts in this case and the facts in *Purvis*.

In *Purvis*, a police officer asked the hotel staff to keep the trash that they collected from the defendant's hotel room separate and then to give that trash to the officer. 249 Or at 405. Looking through the trash that the staff had turned over to him, the officer discovered evidence of the defendant's illegal drug use. *Id.* at 406. Although the defendant in *Purvis* argued that the police had invaded his privacy rights in violation of the state and federal constitutions, this court held otherwise. The court began by recognizing that the "[d]efendant's claim to privacy terminated with respect to items discarded by him and which he impliedly authorized to be hauled away." *Id.* at 410. As the court explained, "the objects which [the] defendant deposited in the ash trays and waste baskets can be regarded as abandoned property," in which he retained no protected privacy interest.[3] *Id.* at 411.

---

[3] The court was careful to make clear in *Purvis* that the police could not have entered the defendant's hotel room without a warrant or an exception to the warrant requirement to look through his garbage. *See* 249 Or at 411 (explaining that, although entering the room would not violate any privacy interest that the defendant retained in the trash, it would violate his right to privacy in the room). Similarly, in this case, the officers waited until the sanitation company had removed defendants' garbage from Howard's property before examining it.

In this case, when defendants turned the garbage over to the sanitation company without any restriction on its disposition, they effectively abandoned that property in the same way that the defendant in *Purvis* did. Because the defendants in this case retained no greater protected privacy interest in the garbage than the defendant in *Purvis* did, the police did not violate defendants' Article I, section 9, rights when they looked through it.

■       The dissenting opinion in the Court of Appeals, which defendants appear to adopt, would have reached a different conclusion. The dissenting opinion reasoned that, under this court's decision in *Campbell*, the officers' acts invaded a constitutionally protected privacy interest because those acts, "if engaged in wholly at the discretion of the government, will significantly impair the people's freedom from scrutiny." *Howard/Dawson*, 204 Or App at 450 (Schuman, J., dissenting) (quoting *Campbell*, 306 Or at 171) (internal quotation marks omitted). As this court recognized in *Campbell*, however, the freedom from scrutiny that Article I, section 9, protects turns in large part on "social and legal norms of behavior." *Campbell*, 306 Or at 170; *cf. State v. Meredith*, 337 Or 299, 306-07, 96 P3d 342 (2004) (explaining that freedom from scrutiny turns on the applicable legal and factual context in which the government acts).

■       Here, the legal relationship between defendants and the sanitation company effectively controls the question whether defendants retained a constitutionally protected privacy interest in the garbage. *See State v. Cook*, 332 Or 601, 607-08, 34 P3d 156 (2001) (recognizing that proposition). To be sure, the privacy that Article I, section 9, protects is not necessarily coextensive with property law. *Compare State v. Dixon/Digby*, 307 Or 195, 211-12, 766 P2d 1015 (1988) (the presence of a trespass does not necessarily mean that police officers have invaded a constitutionally protected privacy interest), *with Campbell*, 306 Or at 169 (the absence of a trespass does not necessarily mean that the police officers have not invaded a constitutionally protected privacy interest). Rather, the degree to which property law informs questions of privacy varies with the context in which the challenged action occurs. In this context, the court has recognized that, when a person gives up all rights to control the disposition of

property, that person also gives up his or her privacy interest in the property in the same way that he or she would if the property had been abandoned. *See Purvis*, 249 Or at 410-11 (recognizing that proposition).

▮      Defendants advance an alternative argument. They note that, as they testified at the suppression hearing, they did not expect that the sanitation company would look through their garbage or permit someone else to do so. However, we need not decide whether defendants' subjective expectations were reasonable because, as this court has explained, "the privacy protected by Article I, section 9, is not the privacy that one reasonably *expects* but the privacy to which one has a *right*." *Campbell*, 306 Or at 164 (emphasis in original). It follows that defendants' subjective expectations are not necessarily dispositive to our analysis under Article I, section 9. Indeed, the defendant in *Purvis* may have expected that the hotel staff would dispose of his trash without inspecting it or permitting the police to do so. The court's holding in *Purvis* did not turn on that expectation, however. It turned instead on the proposition that, in effectively abandoning his interests in the property, the defendant gave up any right to control its disposition and, as a result, any protected privacy interest in it. That holding applies with equal force here. The officer did not violate defendants' Article I, section 9, rights when he examined the garbage that the sanitation company had collected from defendants and turned over to him.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.