No. 64          October 6, 2016          403

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

MAX BARNTHOUSE,
aka Max Davis Barnthouse,
*Respondent on Review.*

(CC 120431515; CA A153361; SC S063426)

On review from the Court of Appeals.*

Argued and submitted March 10, 2016.

David B. Thompson, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the briefs were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Stephen A. Houze, Portland, argued the cause and filed the brief for respondent on review.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices, and DeHoog, Justice pro tempore.**

BREWER, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

\*   Appeal from Multnomah County Circuit Court, Christopher J. Marshall, Judge. 271 Or App 312, 350 P3d 536 (2015).

\*\*  Nakamoto, J., did not participate in the consideration or decision of this case.

**BREWER, J.**

The issue on review in this case is whether police officers' handling of an express mail package violated the rights of defendant—the package's addressee—to be free from an unreasonable seizure of the package under Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United Sates Constitution. As explained below, we conclude that the officers' actions violated Article I, section 9, and that defendant is entitled to suppression of the evidence discovered as a result of the seizure.

## I.  FACTS AND PROCEDURAL HISTORY

The pertinent facts are undisputed. Inter-agency drug interdiction teams comprising United States Postal Service (USPS) inspectors and local police officers routinely examine in-transit mail at USPS mail sorting centers, looking for packages that might contain contraband. One such team, made up of Postal Inspector Helton and Portland Police Bureau officers Castaneda and Groshong, was deployed to examine packages at a USPS air cargo center near the Portland International Airport early in the morning of February 22, 2012.

The sorting process for mail arriving at that facility began, as in the normal course, sometime before 6:00 a.m. Officer Castaneda oversaw the routine sorting of mail into bins. Castaneda noticed an Express Mail package addressed to "Maxi-pad Barnt" at defendant's Portland residence, which had a guaranteed delivery time of noon that day; he picked it up to examine it. Several aspects of the package drew his attention. In addition to the addressee's apparently fictitious name, the package showed that it had been mailed from the 19711 zip code (Newark, Delaware), but had a return address of 19810 (Wilmington, Delaware). Further, the package was sent from a state where the use and sale of marijuana are illegal, the sender had paid cash for the postage, a box for waiving signature upon delivery had been checked, no phone number had been listed for either the sender or the recipient, and the addresses were handwritten rather than typed. Together, those factors indicated to Castaneda that the package might contain contraband.

Castaneda showed the package to Inspector Helton, who agreed that the package looked suspicious. Helton then placed the package a few feet away, on a dog deployment line, in preparation for a dog sniff. The package was placed in the line with six other parcels of approximately the same size and shape, separated from one another by a couple of feet. Officer Groshong, the narcotics K-9 handler for the interdiction team, then came from around a corner with a dog, who alerted to the presence of contraband in the package.

After the dog alerted to the package, Castaneda, as he later testified, "took custody of the parcel," taking it from Groshong's hands and giving it to Helton for further investigation. Helton placed the package on a cart designated for mail that the dog had identified and conducted computer searches on the sender and addressee. Those searches did not disclose that either the sender's or the recipient's address was associated with criminal activity. Nonetheless, the interdiction team decided to contact the addressee and try to obtain consent to search the package. They did not attempt to obtain a search warrant.[1] Castaneda testified that, even if the dog had not alerted to the package, the team would have segregated the package in an identical manner for further investigation and, ultimately, would have taken the package to the addressee to attempt to obtain consent to open it and examine its contents. That is, Castaneda clarified, if the dog had not alerted to the package, nothing about the investigation would have changed.

At about 9:30 that morning, Helton, Castaneda, and another Portland police officer, Francas, took the package to defendant's residence. When they arrived, they knocked on the front door. Two people answered. Castaneda identified himself as a Portland police officer and asked if either person was expecting a package. When they responded that they were not, Castaneda showed them the package addressed to "Maxi-pad Barnt." They laughed and said that the package must be for defendant, their housemate, who was not there. Castaneda obtained defendant's full name and phone number from them and called him. When defendant answered,

---

[1] When defense counsel asked Castaneda why he did not apply for a warrant, he responded: "[T]here's other ways of opening the package."

Castaneda told defendant that he was a police officer and asked to whom he was speaking. Defendant identified himself. Castaneda explained to defendant that he was not under arrest but that Castaneda was investigating a suspicious package addressed to a person with a similar name at defendant's residence. Defendant told Castaneda that he was not expecting a package and that he did not recognize the sender's name. Castaneda then asked defendant for consent to open the package and examine its contents. Castaneda explained that defendant could refuse consent, but that, if he refused, the officers would apply for a search warrant. Defendant hesitated but ultimately gave Castaneda consent.

While Castaneda remained on the phone with defendant, Francas opened the package and found a yellow shirt wrapped around several stacks of United States currency. When Castaneda told defendant that there was currency in the package, defendant responded that it was not his, that he was not expecting any money, and that there was no reason for anyone to send him money through the mail. Castaneda then informed defendant that he was continuing his investigation.[2] Castaneda asked defendant for consent to search his bedroom for evidence of narcotics distribution or money laundering. When defendant hesitated, Castaneda again explained that defendant had the right to refuse but, if he did, the officers would apply for a warrant to search the residence. Castaneda reassured defendant that he was not under arrest. Defendant seemed to Castaneda to become very nervous, but he consented to a search of his room. Castaneda gave defendant his contact information and then terminated the phone call.

The search of defendant's room revealed, among other things, a large quantity of marijuana, as well as packaging materials, a vacuum sealer, unused postal boxes, packaging tape, and wrappers designed to hold bundles of money. Following those discoveries, defendant was charged with unlawful possession of marijuana and delivery of marijuana for consideration.

---

[2] At the suppression hearing, the parties stipulated, in addition to the evidence summarized above, that the package "did not leave the officers' physical possession during the time that they were at the house, and that it eventually came back to the property room, without transferring physical possession."

Before trial, defendant moved to suppress the evidence discovered in the searches of the package and his bedroom. Defendant argued that, under both Article I, section 9, and the Fourth Amendment, the officers had unlawfully seized the package without probable cause or having obtained a warrant, and that the officers had exploited that illegality in obtaining his consent to the searches. In particular, defendant asserted that he had a constitutionally protected possessory interest in the package while it was in the stream of mail. Defendant further argued that the officers significantly interfered with that interest, and therefore initially seized the package, when they removed it from the sorting bin and set it aside for a dog sniff. Moreover, defendant argued:

> "And the further they go, the more it is clear as can be that indeed we do have a seizure from a constitutional perspective. So if it is not immediately at the moment it's taken out of the first bin, it is certainly at some moment in time along this chain of events that they continue to exercise exclusive control and dominion of it, and indeed, will not permit it to go back into the stream of mail for its intended delivery to the recipient."

The trial court granted the motion to suppress. The court ruled that

> "the seizure happened at the time that the officer took the package and set it aside, and already had determined, according to his testimony, that regardless of the dog sniff test results, regardless whether the dog alerted or didn't alert, that this package was set aside for a delivery by the police officer and the postal employee, and that the plan was already set in place that that's what was going to happen with this package.

> "*** [By the time of the dog sniff,] a seizure had happened. Because it didn't matter what the results of the dog sniff test, according to the officer himself. And so we have to look at that that's a seizure right there at that time, that the plan is already that the delivery is not going to happen in the regular course.

> "And so it's more than a mere setting it aside or putting it on a different conveyor belt, or putting it in a different bin. This is really a special delivery that's going to happen.

And then we saw what that delivery plan was. So there is the seizure happening."

The court also determined that there was neither reasonable suspicion nor probable cause to seize the package when it was removed from the bin and segregated for later police operations and, therefore, the seizure was unreasonable:

"So the court is going to find under the totality of the circumstances here, that at that moment in time [before the dog sniff], that the officers did not have probable cause, or didn't have reasonable suspicion under either of those standards, and we have to look at all of those circumstances that we had there.

"I think the record is pretty clear about what factors they would be relying on and the officers went through themselves and talked about the particulars of the package. The waiver of the signature upon delivery being highlighted[;] * * * the sending post office was in a different zipcode [than the sender's residence zipcode;] that there was a handwritten label; [the postage] was paid in cash; and the name of the addressee not appearing to be a real name, and those were the items that they could see on it.

"So that was fine to look at all of that, and fine, you know, to do some further inquiry as to the package. But at the moment it is set aside for this special delivery, under the facts of this case, that's when we've got a seizure, and it just not supported by reasonable suspicion at this point."

The trial court further concluded that a seizure occurred, at the latest, while Castaneda was on the telephone with defendant after the officers had taken the package to defendant's residence:

"[T]here was a seizure for sure at the time that the officer is on the telephone with the defendant and the officer is trying to get consent for a search, and the officer tells the defendant that if he denied consent then the officer would apply for a search warrant."

The state then urged the court to rule that Castaneda did not exploit any illegality in the seizure of the package when he obtained defendant's consent to the searches of the package and his bedroom and, therefore, that the searches were lawful. The trial court nevertheless

determined that the officer did exploit the illegality in seeking defendant's consent to the searches and thus implicitly ruled that defendant's consent did not satisfy an exception to the warrant requirement. Based on those determinations, the court granted defendant's motion to suppress the challenged evidence.

The state appealed the suppression order. Before the Court of Appeals, the state argued that, until the guaranteed time for delivery of the package had passed, defendant had no protected possessory interest in it either under the Fourth Amendment or Article I, section 9, because he had no right or ability to control the package during its transit. It followed, the state reasoned, that defendant had no protected possessory interest in the package at any point during the police operation. According to the state, the package therefore was not seized for constitutional purposes before defendant consented to the search. Alternatively, the state argued that defendant's possessory interest in the package, if any, was limited to the minimal right to receive the package at its guaranteed delivery time, and no seizure occurred because the police did not significantly interfere with that interest, inasmuch as their actions did not delay the timely delivery of the package. Finally, the state argued that, even if the package had been seized illegally, the police did not exploit that illegality in obtaining defendant's consent to search the package and his room. However, in the Court of Appeals, the state did not renew its argument before the trial court that any seizure of the package was justified by reasonable suspicion that the package contained contraband.

The Court of Appeals affirmed the trial court's suppression ruling. *State v. Barnthouse*, 271 Or App 312, 350 P3d 536 (2015). The court first held that, as its addressee, defendant had a constitutionally protected possessory interest in the package while it was in transit in the stream of mail. That was so, according to the court, for two reasons: First, as Helton had testified, "a customer could go to their local post office and say I'm expecting an express mail package, if you could hold it out and let me pick it up early in the morning, I know that postal employees will provide that service to customers." *Id*. at 330. Second, the court noted that

the USPS *Domestic Mail Manual* provides that, between the time an item of mail is deposited into the mail stream by the sender and the time it is placed on a truck for delivery, "addressees may control delivery of their mail" by directing the item to be "held at a designated Post Office location for pickup by a specified addressee or designee." *Id*. (quoting USPS *Domestic Mail Manual*, §§ 508.1.1.1 and 508.7.2.1). It followed, the court stated, that the addressee of an express mail package "has something akin to a legal right to control—*i.e.*, to exercise restraining or directing influence over—a package (addressed to the addressee) while that package is in transit. *** [T]hat evidence is sufficient to establish *** the addressee's constitutionally protected possessory interest in that package." *Id*. The Court of Appeals further concluded that

> "defendant had a possessory interest in the package at the time that Castaneda and Helton removed it from the stream of mail and that he retained that right throughout the period during which the police investigated the package, including at the time that the police brought the package to his residence and obtained his consent to the searches of the package and his bedroom. As to the nature and scope of that possessory interest, we conclude that, for an in-transit USPS express mail package, the police may not detain such a package without probable cause and a warrant or without the existence of one of the carefully delineated exceptions to the warrant requirement."

*Id*. at 334.

Having concluded that defendant had a possessory interest in the package, and that the police lacked authority to detain the package without probable cause and a warrant, the Court of Appeals turned to the question whether the "government's conduct, beginning with the removal of defendant's package from the mail stream," significantly interfered with that possessory interest. *Id*. at 337. The court held that once the officers took possession of the package and decided to seek defendant's consent to search it, and thereafter, while maintaining physical control of the package during the "knock and talk" operation, "the interdiction team quite literally dispossessed defendant of the package." *Id*. at 338. That is, the officers "deprived defendant of his

package as well as his right to control its course through the mail." *Id.* at 339. The Court of Appeals concluded that it was reasonable to infer that the officers would maintain possession of the package while a warrant was sought if defendant refused consent to search. *Id.* at 338-39.[3] As a consequence, the court held, "the government significantly interfered with defendant's constitutionally protected possessory interest in the package, beginning with the initial removal of it from the stream of mail and continuing through their entire interaction with defendant." *Id.* at 339.

Finally, the court held that defendant's voluntary consent to the search of the package and his bedroom did not justify the seizure, because the officers impermissibly had exploited the seizure to obtain that consent. *Id.* at 341-46. Accordingly, the Court of Appeals affirmed the trial court's suppression order. This court granted review of that decision. As explained below, we affirm the trial court's suppression ruling and the decision of the Court of Appeals, albeit based on somewhat different reasoning.

On review, the state presents three challenges to the Court of Appeals' decision. First, the state argues that defendant lacked a constitutionally protected possessory interest in the package when the police removed it from the sorting bin at the USPS facility. Second, the state asserts that the officers did not meaningfully interfere with any possessory interest that defendant had (assuming one existed) so as to effect a seizure under either Article I, section 9, or the Fourth Amendment. Third, the state makes the argument that it failed to present to the Court of Appeals: it asserts that, even if the officers significantly interfered with a possessory interest that defendant had in the package, the seizure was not unreasonable in the absence of a warrant because the officers reasonably suspected that the package contained contraband. The state does not renew its argument before the Court of Appeals that, if a seizure occurred, defendant's eventual consent to the searches of the package

---

[3] In so concluding, the Court of Appeals specifically referred to the trial court's finding, set out above, that there was a seizure at the latest when Castaneda told defendant that, if he refused consent, the officers would apply for a warrant. *Id.* at 339 n 9.

and his bedroom satisfied the consent exception to the warrant requirement.

## II. ANALYSIS

In keeping with our customary practice, we first address the state's arguments under Article I, section 9; we turn to the Fourth Amendment only if we conclude that no state constitutional violation occurred. *State v. Newcomb*, 359 Or 756, 764, 375 P3d 434 (2016). Article I, section 9, provides, in part: "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"[4] As its terms suggest, Article I, section 9, applies only when government officials engage in a "search" or effect a "seizure." *State v. Howard/Dawson*, 342 Or 635, 639-40, 157 P3d 1189 (2007). Somewhat different, albeit interrelated, interests are implicated in a search than in a seizure. A search occurs when the government invades an individual's privacy interest, *State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986), whereas a seizure occurs when there is a "significant interference, even a temporary one, with a person's possessory or ownership interests in the property." *State v. Juarez-Godinez*, 326 Or 1, 6, 942 P2d 722 (1997); *Owens*, 302 Or at 207. *See Newcomb*, 359 Or at 764 ("Although the two interests—privacy and ownership/possession—are not necessarily coextensive, property law concepts of ownership and possessory rights can bear significantly on the existence or nonexistence of a protected privacy interest in the property."). The state's first two arguments are directed at establishing that the officers did not effect a seizure because, according to the state, defendant did not have a constitutionally protected possessory interest in the package and, even if he did, there was no significant interference with that interest.

Article I, section 9, does not protect against every search or seizure by the government, but only against those that are arbitrary, oppressive, or otherwise "unreasonable." *State v. Fair*, 353 Or 588, 602, 302 P3d 417 (2013). Subject to certain limited exceptions, a search or seizure is

---

[4] The Fourth Amendment to the United States Constitution states:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

unreasonable and, therefore, unlawful under Article I, section 9, unless it is supported by probable cause and a warrant. *State v. Rodgers/Kirkeby*, 347 Or 610, 624, 227 P3d 695 (2010). The state's third argument is directed at establishing the reasonableness of any seizure in this case because, according to the state, the officer's reasonable suspicion satisfied an exception to the warrant requirement allowing for the temporary detention of the package.

A.   *Defendant's Interest in the Package*

We begin our analysis with the state's argument that defendant lacked a constitutionally protected interest in the package when it was removed from the sorting bin at the USPS facility. Initially, we note that defendant has asserted that he had a constitutionally protected interest in the package throughout its transit in the stream of mail, and the trial court so concluded. Viewed in that broader context, then, the threshold question is whether—as the addressee of the package—defendant had a constitutionally protected interest in it while it was in the stream of mail. The state does not dispute that an addressee has a constitutionally protected privacy interest that precludes an unreasonable search of a package in the stream of mail. *See Ex parte Jackson*, 96 US 727, 733, 24 L Ed 2d 877 (1877) (letters and sealed packages, when in the mail, may only be opened and examined under a warrant, as would be required when papers are subjected to a search in one's household). But, as the state correctly observes, defendant's challenge in this case is to an asserted unreasonable seizure—not a search—of the package.[5] Accordingly, the precise threshold question is whether defendant, as the package's addressee, had a protected possessory interest in the package while it was in the stream of mail.

The term "possessory interest" does not appear in the text of Article I, section 9; rather, it is a term that this court and other courts (usually interpreting the Fourth Amendment) have used to determine whether an item of property has been seized for constitutional purposes. *See,*

_____

   [5]  *See Barnthouse*, 271 Or App at 325 n 3 ("Defendant does not argue that he had any ownership interest in the package.").

*e.g.*, *Newcomb*, 359 Or at 773 (describing "seizure," whether under Article I, section 9, or under Fourth Amendment, as significant interference with "possessory interest" in property). The concept of a possessory interest, as it is pertinent to Article I, section 9, is grounded in property law. *Id.* at 764; *Howard/Dawson*, 342 Or at 642-43.

This court has not previously considered whether an addressee has a possessory interest in mailed packages under Article I, section 9, nor has it identified the contours of such an interest.[6] However, at minimum, as a third-party beneficiary of the agreement between the sender and USPS, defendant had the right—a property-based right—to have the package delivered to him by its guaranteed delivery time. *See* USPS *Domestic Mail Manual* § 113 (setting out guaranteed delivery standards for priority mail express); *see also United States v. LaFrance*, 879 F2d 1, 7 (1st Cir 1989) (addressee's possessory interest in FedEx package while in transit derives from contract; possessory interest at stake was contract-based expectancy that package would be delivered to designated address by guaranteed day and time).

The fact that Article I, section 9, emphasizes property law concepts in determining what qualifies as a protected possessory interest supports the conclusion that that possessory interest was protected under the Oregon

---

[6] In *State v. Kosta*, 304 Or 549, 748 P2d 72 (1987), police officers stopped a Federal Express truck and exposed a package inside to a dog sniff. In rejecting the defendant's challenge to the trial court's denial of his motion to suppress evidence found in a search of the package after the dog had alerted, this court alluded to, but did not reach, the issue before us:

"In the present case, we need not determine the bounds of an individual's Article I, section 9, interests to conclude that defendant lacked any privacy or possessory interest in the package at the time when the police intercepted the Federal Express truck and subsequently exposed the package to the trained narcotics detection dog. Although defendant argues that he 'was injured by the challenged police conduct,' he fails to articulate any basis for his alleged privacy interest to be free from governmental intrusion into the package, given that he did not cause the package to be transported and that he was not the addressee, the intended recipient or an individual with an otherwise identifiable interest at the time of the detention of the package. Consequently, there is no basis for defendant to assert a possessory or ownership interest in the package during transit. We hold that defendant's Article I, section 9, interests were not violated by the police conduct involving the stop of the truck and the exposure of the package to the police dog."

*Id.* at 553-34 (footnote omitted).

Constitution. *See Newcomb*, 359 Or at 764. So, too, does the existence of defendant's accompanying constitutionally protected privacy interest in the package while it was in the stream of mail. *See Jackson*, 96 US at 733; *see also Newcomb*, 359 Or at 764 (explaining interrelatedness of privacy and possessory interests in property); *State v. Cook*, 332 Or 601, 609, 34 P3d 156 (2001) (referring, for purposes of Article I, section 9, to "the privacy interests that accompanied the right to possess [items]"). In fact, Castaneda arguably acknowledged defendant's possessory interest in the package when he sought defendant's consent to open and search it. *See Juarez-Godinez*, 326 Or at 7-8 (officer's "request that defendant consent to the search at least arguably was a recognition of defendant's possessory interest").

The state remonstrates that defendant had no right to demand that the package be held or redirected while it was in the stream of mail and that he therefore lacked sufficient dominion or control over the package to have constructive possession of it before its guaranteed delivery time.[7] In support of that argument, the state relies on decisions involving the question whether a defendant possessed an item under a particular criminal statute criminalizing the possession of that item. *See*, *e.g.*, *State v. Barger*, 349 Or 553, 247 P3d 309, *adh'd to as modified on recons*, 350 Or 233, P3d 1030 (2011), (holding that, in accessing Internet webpage and intentionally calling digital images of child sexual abuse onto computer screen, defendant did not "possess" images within meaning of statute criminalizing possession of digital images of sexually explicit conduct involving children); *State v. Casey*, 346 Or 54, 203 P3d 202 (2009) (holding that defendant charged with being felon in possession of firearm did not possess a firearm that he did not know was concealed on a guest's person).

But the issue here is not whether defendant *possessed* the package; rather it is whether defendant had a protected *possessory interest* in it. The difference matters

---

[7] *See State v. Oare*, 249 Or 597, 599, 439 P2d 885 (1968) ("Evidence of the control or the right to control is necessary to constructive possession."). The state focuses on constructive possession because defendant concedes that he did not actually possess the package while it was in the stream of mail.

because not all constitutionally protected possessory interests in property are necessarily accompanied by possession, whether actual or constructive. On that point, other authority from this court is more instructive than the decisions that the state cites.

In *Juarez-Godinez*, the defendant, who was stopped for speeding, could not produce a driver license but gave the officer a temporary registration for the car. 326 Or at 3. The person named on the registration was not the defendant and was not present. The officer learned that the registered owner was on probation for delivery of a controlled substance. The officer summoned a drug-sniffing dog to the scene. *Id.* at 4. About 15 minutes after the initial stop, the officer arrested the defendant for failure to display a valid driver license and placed him in the back of a police vehicle. The officer then asked the defendant and his passengers for consent to search the car. They refused. Another police officer arrived later with a dog, which alerted to the presence of drugs in the car. *Id.* The officer had the car impounded and obtained a search warrant. The ensuing search revealed a substantial quantity of drugs, which led to the defendant being charged with delivery of a controlled substance. The defendant moved to suppress the evidence found in the search, arguing that it was the product of an unlawful seizure of the car. The trial court granted the motion, and the Court of Appeals affirmed. *Id.* at 5.

On review, this court also affirmed, concluding that the police had seized the car for purposes of Article I, section 9, even though the defendant did not own the car and was prohibited from driving it on account of the arrest. As the court explained,

> "Indisputably, defendant had been placed under arrest. As a consequence of that arrest, defendant was unable to drive the car away himself. Still, he retained a possessory interest in the car and, in normal circumstances, could have transferred possession of it to one of his passengers and directed that it be driven away."

326 Or at 7. In short, at the point when the police arguably seized the defendant's car, the defendant had neither actual possession nor control-based constructive possession of the

car. Nevertheless, this court held that he had a possessory interest in it under Article I, section 9. *Juarez-Godinez* thus shows that a person may have a protected possessory interest in property under Article I, section 9, notwithstanding being unable to assert dominion or control over it—that is, even though the person is not in actual or constructive possession of it.

Here, defendant had a contract-based possessory interest in the package while it was in transit that, at a minimum, included the right to receive delivery of it by its guaranteed delivery time.[8] The state's remonstrance notwithstanding, we conclude that that possessory interest was protected under Article I, section 9.

B.  *Did the State Significantly Interfere With Defendant's Possessory Interest?*

The next question is whether the actions of the officers significantly interfered with defendant's possessory interest in the package. *See Juarez-Godinez*, 326 Or at 6 (seizure occurs when there is significant interference with possessory interest in property). Although defendant's main argument is that the officers seized the package when it was removed from the sorting bin at the USPS facility, as noted, he has consistently asserted that, "beginning with the initial detention of the package, the police made a series of warrantless seizures in violation of both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution." *Barnthouse*, 271 Or App at 321. In keeping with the progressive nature of that argument, the trial court concluded that, at the latest, a seizure occurred when Castaneda told defendant that, if he were

_____

[8] The parties, as did the Court of Appeals in its analysis, primarily focus their arguments concerning the existence and scope of defendant's possessory interest in the package on various provisions of the Domestic Mail Manual published by the United States Postal Service. Specifically, they point to the provisions that make clear that addressees "may control delivery of their mail" by requesting that it be held for pickup or delivered to a different address. *See Barnthouse*, 271 Or App at 330 (quoting USPS *Domestic Mail Manual*, §§ 508.1.1.1 and 508.7.2.1). We need not address those arguments, or the merits of the Court of Appeals' analysis of defendant's possessory interest based on those provisions, because, as we explain below, we conclude that, irrespective of those provisions, the police in this case significantly interfered with defendant's right to receive delivery of the package.

to withhold consent to a search of the package, the officers would apply for a warrant. Because, as we now explain, evidence in the record supports that conclusion, we need not determine whether a seizure occurred earlier in the course of the law enforcement operation.

As discussed, in observing the sorting of mail at the postal facility, Castaneda noticed the package, considered it suspicious, and set it aside for further investigation. He then subjected the package to a dog-sniff, and the dog alerted to the presence of contraband. At the suppression hearing, Castaneda testified that, even if the dog had not alerted to the package, nothing about the investigation would have changed; the package would have been taken by authorities to defendant's residence in an attempt to obtain his consent to a search of its contents. It is true, as the state points out, that the officers brought the package to defendant's residence before its guaranteed delivery time. However, that does not mean that they did not significantly interfere with defendant's possessory interest in it. According to the trial court's unchallenged finding: "This is really a special delivery that's going to happen. And then we saw what that delivery plan was." In accordance with that plan, as Castaneda explained to defendant, if defendant had not consented to a search, the officers would have sought a warrant.

Consistent with the trial court's finding, a reasonable inference to be drawn from Castaneda's testimony is that, if defendant had chosen not to consent to the search and instead required the officers to apply for a warrant, the officers would not have delivered the unopened package to defendant while they sought a warrant, nor would they have permitted anyone else to deliver it to him, irrespective of its guaranteed delivery time. *See Juarez-Godinez*, 326 Or at 7 (appellate court is bound by trial court's factual findings in suppression hearing, as long as those findings are supported by evidence in record). Under those circumstances—that is, where, having physical control of the package, the officers curtailed its guaranteed delivery to defendant—the trial court did not err in concluding that the officers significantly interfered with defendant's possessory interest in the package and, therefore, seized it. *See id*. at 8 (describing seizure effected by curtailment of defendant's possessory interest).

## C.  *Was the Seizure Unreasonable? – the State's Unpreserved Reasonable Suspicion Argument*

Our conclusion that the package was seized ordinarily would not end our inquiry, because, as discussed above, only seizures that are "unreasonable" violate Article I, section 9. The trial court ruled that the officers' seizure of the package in this case was unreasonable, because it was not supported either by reasonable suspicion or by probable cause and a warrant. The state contends on review that any seizure in this case was justified on the ground that a brief warrantless investigative detention of property is lawful if police officers have reasonable suspicion that the property is associated with criminal activity. According to the state, because a police officer lawfully may stop—*i.e.*, seize—a *person* without a warrant based on reasonable suspicion of criminal activity without violating Article I, section 9, *Rodgers/Kirkeby*, 347 Or at 621, a brief investigative seizure of *property* should not be subject to a more stringent standard.[9]

We conclude that the state's reasonable suspicion argument is not properly before us. The state's argument hinges on the premise that the trial court erred in ruling that the seizure of the package was not supported by reasonable suspicion, but the state did not challenge that ruling before the Court of Appeals. Accordingly, it is not preserved, and we do not consider it further. *See* ORAP 9.20(2) (questions before the Supreme Court include all questions that were properly before the Court of Appeals that the petition or response claim were incorrectly decided); *see also State v. Sokell*, 360 Or 392, 393 n 1, ___ P3d ___ (2016) (applying rule and declining to consider arguments not raised in Court of Appeals). Because the state has not advanced any other argument supporting a different outcome,[10] we conclude that

---

[9] *See United States v. Place*, 462 US 696, 103 S Ct 2637, 77 L Ed 2d 110 (1983) (applying principles of *Terry v. Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), which permits warrantless investigative seizure of person based on reasonable suspicion, to hold that government may temporarily seize property without warrant and without violating Fourth Amendment based on reasonable suspicion that it is associated with criminal activity).

[10] As noted, the state argued in the Court of Appeals that the trial court also erred in ruling that defendant's consents to the searches of the package and his bedroom were invalid insofar as the officers exploited the seizure of the package

the seizure of the package violated Article I, section 9.[11] Because the package was unlawfully seized, the trial court correctly suppressed the evidence discovered as a result of that seizure.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

to obtain those consents, but it has not advanced that argument in this court. Accordingly, we do not consider it here.

[11] Having concluded that the seizure of the package was unlawful under Article I, section 9, we do not consider its lawfulness under the Fourth Amendment.