Argued and submitted October 27, 2016, affirmed January 5, petitions for review allowed August 3, 2017 (361 Or 800)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRACY LYNN LIEN,
*Defendant-Appellant.*

Linn County Circuit Court
14CR02030; A158646 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TRAVIS ALLEN WILVERDING,
*Defendant-Appellant.*

Linn County Circuit Court
14CR02034; A158647

387 P3d 489

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellants. With her on the briefs was Ernest G.

Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Peenesh H. Shah, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jamie K. Contreras, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Defendants appeal separate judgments convicting them of the delivery of illegal drugs. Defendants executed conditional pleas in the trial court following that court's denial of defendants' motions to suppress. Defendant Lien conditionally pleaded guilty to one count of unlawful delivery of heroin, ORS 475.850, and no contest to one count of unlawful delivery of methamphetamine, ORS 475.890. Defendant Wilverding conditionally pleaded guilty to one count of unlawful delivery of methamphetamine, ORS 475.890. As part of their conditional pleas, defendants reserved the right to challenge the denials of their motions to suppress in this appeal.[1]

The only issue on appeal is whether the trial court erred in denying defendants' motions to suppress because, defendants contend, the police did not have authority under Article I, section 9, of the Oregon Constitution to conduct a warrantless search of defendants' garbage. The police searched the garbage after defendants' garbage cart had been picked up by their sanitation company, but the pickup had been made somewhat earlier than typical, in a slightly different manner than usual, and not by the same truck that otherwise emptied defendants' cart. Defendants acknowledge that this case may be controlled by the Supreme Court's decision in *State v. Howard/Dawson*, 342 Or 635, 157 P3d 1189 (2007), but contend that either that case was wrongly decided or it is distinguishable from this case because, here, defendants' garbage was removed "outside the ordinary course of business." Because we conclude that *Howard/Dawson* controls our decision and is not distinguishable in any way that is meaningful to our constitutional analysis—indeed, the facts are nearly completely indistinguishable from *Howard/Dawson*—we conclude that the trial court did not err in denying defendants' motions to suppress. Accordingly, we affirm the judgments.

The pertinent facts are not disputed. Defendant Lien resided in a home in Lebanon, Oregon, for approximately

---

[1] Defendants were separately indicted and filed their own motions to suppress, but those motions were largely identical on the legal issue before us and arose from the same set of facts. Following the entry of separate judgments and the filing of different notices of appeal, we consolidated the two appeals.

five years. During the time period relevant to this appeal, defendant Wilverding was living with her. Over the course of several months, the Lebanon Police Department began to receive information that defendants' residence was a source of possible drug activity. Investigating further, Lebanon Police Department Detective McCubbins contacted the sanitation company, Republic Services (Republic), that regularly hauled away defendants' garbage. Republic is a private company that has an agreement with the City of Lebanon to haul garbage from private residences. Neither defendant Lien nor Wilverding has a separate written agreement with Republic.

The Lebanon Police Department asked Republic to collect the contents of defendants' garbage cart separately from the garbage of the rest of the private residences Republic served so that defendants' garbage could be searched by police officers. On the day that defendants' garbage was usually picked up, the police parked down the street to observe Republic's collection of defendants' trash. The police arrived at 7:00 a.m. and noticed that defendants' garbage cart had already been placed by the sidewalk. On that morning, a manager for Republic drove to defendants' residence in a white pickup truck ahead of the larger mechanical sanitation truck that would normally collect defendants' garbage. The manager arrived outside defendants' residence around 8:00 or 9:00 a.m. The manager timed his drive to make sure that he showed up before the company's larger mechanical truck emptied the cart. The manager grabbed defendants' cart and placed it in his company pickup truck. The manager then provided defendants with an empty replacement cart from the back of his truck.

The manager drove defendants' bin and garbage to a Republic company lot where Republic stored its extra garbage carts. The manager then handed control of the cart to the police, who searched it and found, among other things, evidence of illegal drugs, including drug bindles.

No party disputes that the manager's actions deviated in minor ways from the company's typical collection routine. As noted, the manager collected defendants' cart before the larger mechanical truck would normally empty

it and replaced that cart with a different one. Typically, the mechanical truck would empty defendants' cart into the truck with other city residents' garbage and then dump the combined garbage in a landfill. Republic would also typically leave the emptied cart behind. Significantly, defendants had no specific contract with Republic that mandated collection at a particular time of day or by a particular truck or method.

Defendants later moved to suppress, among other things,[2] the evidence that the police obtained from the search of defendants' garbage. Defendants argued, as they do here, that the police violated defendants' rights under Article I, section 9, by conducting a warrantless search that was not subject to an exception to the warrant requirement. The trial court concluded that defendants abandoned their rights to their garbage once Republic collected it, and, therefore, they did not have any rights that were violated. As a result, the trial court denied defendants' motions to suppress. As noted above and as discussed in greater detail below, we agree with the trial court and affirm.

We turn to the standard of review. When we review a denial of a motion to suppress evidence, we are bound by the trial court's findings of historical fact "if there is constitutionally sufficient evidence in the record to support the findings." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are not bound by the trial court's ultimate legal conclusions and review those for legal error. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009).

Defendants do not contend that the trial court's findings of fact were supported by constitutionally insufficient evidence, and, as noted, the parties agree on the relevant facts. Defendants only contend that the trial court erred in its ultimate legal conclusion that the police search of defendants' garbage was permissible under Article I, section 9.

---

[2] Defendants also moved to suppress evidence obtained from a subsequent search warrant. The probable cause for that warrant was dependent on the evidence that the police found in their prior warrantless search of defendants' garbage.

Article I, section 9, protects individuals against unreasonable searches and seizures.[3] Defendants contend that the Lebanon Police Department's warrantless seizure and search of defendants' garbage following the department's request to defendants' sanitation company to segregate the garbage "outside the ordinary course of business" violates Article I, section 9. This case depends almost entirely on whether it is controlled by the rule stated in *Howard/Dawson*, which we discuss at length below. First, however, we briefly address defendants' argument that *Howard/Dawson* was wrongly decided. We recognize that defendants likely make this argument solely to preserve it should either party seek and obtain review before the Supreme Court. Defendants directly "acknowledge[] that this court is bound by Oregon Supreme Court case law" and the principle of *stare decisis*. Accordingly, we must reject defendants' argument that *Howard/Dawson* was wrongly decided. *See Schiffer v. United Grocers, Inc.*, 143 Or App 276, 284, 922 P2d 703 (1996), *rev'd on other grounds*, 329 Or 86, 989 P2d 10 (1999) ("We are not in the business of overruling decisions of the Oregon Supreme Court. Correction, if any, lies elsewhere." (Footnote omitted.)).

We turn to defendants' alternative argument that this case is sufficiently distinguishable from *Howard/Dawson* such that a different result must be reached under an Article I, section 9, analysis. For the reasons that follow, while we recognize at least one minor factual difference in this case, we hold that this case is not distinguishable from *Howard/Dawson* in any manner that affects the constitutional analysis or rule stated in that case. Accordingly, we also reject defendants' alternative argument.

In *Howard/Dawson*, as occurred here, the police spoke with the sanitation company that regularly hauled garbage from the defendants' residence. 342 Or at 638. The police asked the company to turn the defendants' garbage over to them after the company had collected it. *Id.* The company did so on the regularly scheduled collection day. *Id.*

---

[3] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The details of the sanitation company's actions in collecting the defendants' garbage in *Howard/Dawson* are not set forth in the Supreme Court opinion, but they are set forth in our en banc opinion:

> "The manager of the company agreed to permit police to inspect [the] defendants' garbage on the next scheduled collection day. On that day, the manager followed the garbage collection truck in a pickup truck. [The defendants'] trash can had been set on the curb and was ready for collection. With a police detective observing, a sanitation employee placed the trash can into the manager's pickup truck, rather than dump the contents into the regular garbage collection truck, and left a replacement can at the curbside. The detective followed the manager, who then drove to a remote location. There, the detective inspected the contents of the can [where the detectives found evidence relating to methamphetamine possession and production]."

*State v. Howard/Dawson*, 204 Or App 438, 440-41, 129 P3d 792 (2006), *aff'd*, 342 Or 635, 157 P3d 1189 (2007). The facts in *Howard/Dawson* as stated above are indistinguishable from the facts in this case save for the fact that, in *Howard/Dawson*, the manager collected the defendants' garbage immediately before the larger collection truck reached the defendants' residence, whereas in this case the manager collected defendants' garbage some uncertain amount of time before the larger collection truck normally would have emptied defendants' garbage cart.

Because we do not merely "fact match" in undertaking our constitutional analysis, we next examine whether slightly different facts in this case matter in any constitutionally meaningful manner based on our Article I, section 9, analysis or whether the rule announced in *Howard/Dawson* might not apply here for some other reason. *See State v. Senn*, 145 Or App 538, 545, 930 P2d 874 (1996) (stating that, in search and seizure law, "fact matching can be a fool's errand"). As discussed below, we see no reason to distinguish *Howard/Dawson* on either basis.

Whenever the police undertake a search or seizure without a warrant, the state must demonstrate by a preponderance of the evidence that the search or seizure did *not* violate Article I, section 9. *State v. Cook*, 332 Or 601, 608,

34 P3d 156 (2001). One manner in which the state can do so is by showing that the defendant had neither a protected privacy nor possessory interest in the property, which would mean that the state's search or confiscation is not a search or seizure implicating Article I, section 9. *State v. Voyles*, 280 Or App 579, 584, 382 P3d 583 (2016). The defendants in *Howard/Dawson* argued before us that the state did not overcome its burden to show that it had not violated the defendants' possessory and privacy interests. 204 Or App at 441. As in *Howard/Dawson*, defendants in this case also contend that the state violated defendants' possessory and privacy interests when the state seized and examined their garbage in the manner it did here; that is, defendants contend that they retained their privacy and possessory interests in the garbage until it was "picked up by the garbage company in the regular course of business" and not through some slightly different method than usual, which was done here at the request of the police.[4]

In *Howard/Dawson*, we first addressed the defendants' argument that the state interfered with their possessory interest in their garbage when the sanitation company collected the defendants' garbage cart and turned it over to police at the police officer's request. *Id.* at 442. In deciding *Howard/Dawson*, we distinguished it from an earlier case where we held that the state had interfered with the defendants' possessory interest when the police themselves seized the defendants' garbage from closed containers on the sidewalk and at the end of a driveway *before* the sanitation company arrived to collect those containers. *Id.* at 442-43 (citing *State v. Galloway*, 198 Or App 585, 109 P3d 383 (2005)). We noted in *Howard/Dawson* that what distinguished the earlier *Galloway* decision was that a person "retained protected possessory interests in the contents of their garbage cans *until that collection occurred.*" *Howard/Dawson*, 204 Or App at 442-43 (emphasis in original). In *Howard/Dawson*, we held that the defendants had no possessory interest *after*

---

[4] The state contends that defendants only preserved their argument that the state violated their constitutionally protected privacy interests and did not sufficiently preserve their argument that the state violated their possessory interests. We reject the state's preservation argument without further discussion and conclude that defendants preserved both of their arguments below.

the sanitation company picked up the garbage. *Id.* at 443. Before the sanitation company collected the defendants' garbage, the defendants maintained a possessory interest in the contents of their garbage cart. *Id.* But after it was collected, they did not; they had relinquished those interests to the sanitation company. *Id.*

Our rule in *Howard/Dawson* applies equally here.[5] Defendants did not retain a possessory interest in their garbage after it was collected by the sanitation company. Defendants, nevertheless, echo a phrase we used in *Howard/Dawson* in which we stated that the garbage there was collected in the "regular course of the sanitation company's collection routine." *Id.* Defendants argue here that their garbage was not collected "by the garbage company in the regular course of business." Defendants try to create a factual distinction from *Howard/Dawson* that either does not exist or is not material here. To the extent that we were concluding in *Howard/Dawson* that the sanitation company there was acting in "the regular course of business," the company was doing so in the same manner as occurred here—by having a manager pick up and replace defendants' garbage cart before the larger mechanical sanitation truck dumped the cart out on the regular collection day. We did not conclude that a slight deviation from an ordinary collection routine was constitutionally significant in *Howard/Dawson*, nor do we do so here. The fact that the garbage was collected by a small or large truck or one minute or one hour before the normal routine is of no constitutional moment in the analysis of whether defendants lost their possessory interest in their garbage when it was otherwise ordinarily collected by the sanitation company on the regularly scheduled collection day. The possessory interest in the garbage is lost in either case upon retrieval by the sanitation company on the regularly scheduled day.[6] As the state argues, defendants

---

[5] On review before the Supreme Court, the defendants in *Howard/Dawson* did not argue that they retained any possessory interest in their garbage after collection by the sanitation company, even when that collection occurred at the request of the police. 342 Or at 640. Thus, our holding on that point remained undisturbed. *Id.* Rather, the defendants argued solely that they retained a privacy interest that the state unconstitutionally violated. *Id.*

[6] In their briefing, defendants also relied on *State v. Barnthouse*, 271 Or App 312, 350 P3d 536 (2015), *aff'd*, 360 Or 403, 380 P3d 952 (2016), which the Supreme

point to nothing in the record giving them a contractual right to demand their garbage be picked up by a particular truck, method, or at a particular time, nor do they point to a contractual right to demand return of their garbage after collection if it is not collected in that manner.

We turn next to whether the state unconstitutionally interfered with defendants' *privacy* interest in their garbage in violation of Article I, section 9, by asking the sanitation company to retrieve defendants' garbage cart in the manner accomplished here and hand it over to the police for a search. On review before the Supreme Court, the defendants in *Howard/Dawson* argued solely that the state had interfered with their privacy right when directing the sanitation company to grab defendants' garbage cart on the regular pickup day and bring it to the police. 342 Or at 640. The Supreme Court rejected that argument and affirmed our decision when it concluded that the defendants had abandoned their privacy rights when they "turned the garbage over to the sanitation company without any restriction on its disposition" because "a person retains no constitutionally protected privacy interest in abandoned property." *Id.* at 641-42 (citing *State v. Purvis*, 249 Or 404, 410-11, 438 P2d 1002 (1968)). For the same reasons stated above, we do not view this case as distinguishable from *Howard/Dawson* either on the facts or with respect to the principle that the Supreme Court announced there.

For those reasons, the trial court properly denied defendants' motions to suppress.

Affirmed.

---

Court affirmed after briefing in this case was complete. In *State v. Barnthouse*, 360 Or 403, 419, 380 P3d 952 (2016), the Supreme Court concluded that the state interfered with a defendant's constitutionally protected possessory rights to an express mail package when the state removed it from the stream of mail, had a police dog sniff it, and then stopped the package from proceeding along its usual and guaranteed delivery course and time. *Barnthouse* is readily distinguishable as there the state did significantly interfere with the package before delivery and took control of it outside the ordinary course of the usual express delivery process. *Id.* Here, defendants abandoned their property to the sanitation company without retaining any contractual right to it, and the police only took control of it after that process was complete.